IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| MIKE RHODES, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 1:19-cv-01030-STA-jay |
| BATES RUBBER, INC.; PARK-OHIO HOLDINGS CORP; PARK OHIO ASSEMBLY COMPONENTS GROUP; PARK-OHIO INDUSTRIES, INC.; FLUID ROUTING SOLUTIONS, LLC; SUPPLY TECHNOLOGIES, LLC; and PAMELA McDANIEL (individually), | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

_____

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**
**ORDER DISMISSING DEFENDANT PAMELA McDANIEL AND DENYING HER**
**MOTION TO DISMISS AS MOOT**
_____

Before the Court is Plaintiff Mike Rhodes's Motion to Remand (ECF No. 19) filed on April 1, 2019. Defendants Pamela McDaniel; Bates Rubber, Inc.; Fluid Routing Solutions, LLC; Park Ohio Assembly Components; and Supply Technologies, LLC have responded in opposition, and Rhodes has filed a reply. Defendant Pamela McDaniel has separately filed a Motion to Dismiss (ECF No. 7), presenting essentially the same issue raised in the Motion to Remand. For the reasons set forth below, Rhodes's Motion to Remand is **DENIED**, McDaniel is **DISMISSED** as a party, and her Motion to Dismiss is **DENIED as moot**.

**BACKGROUND**

**I. Factual Allegations**

Rhodes's Complaint (ECF No. 1-2) alleges claims for age discrimination in violation of the Tennessee Human Rights Act ("the THRA") against his former employer Bates Rubber, Inc. and

1

several other related corporate entities: Fluid Routing Solutions, LLC; Park Ohio Assembly Components; Supply Technologies, LLC; Park-Ohio Holdings Corp.; and Park-Ohio Industries, Inc. (collectively, "the Employer Defendants"). The Complaint further alleges a claim under Tennessee common law for the intentional infliction of emotional distress and outrageous conduct ("IIED") against the Employer Defendants and Rhodes's former plant manager, Pamela McDaniel, in her individual capacity. The Court accepts the following well-pleaded factual allegations as true at this stage of the proceedings.

Plaintiff Mike Rhodes is a former employee of Bates Rubber, Inc. in Lobelville, Tennessee. (Compl. ¶ 2.) Rhodes had been employed at Bates Rubber since 1995. (*Id*. ¶ 23.) Rhodes was 59 years old at the time of his termination and therefore belonged to a class of individuals over the age of 40 who are protected from age discrimination under the THRA. (*Id*. ¶ 7.) Pamela McDaniel was the plant manager at Bates Rubber and had been Rhodes's direct supervisor since 2017. (*Id*. ¶¶ 16, 18.) Defendant Ohio Park Holdings Corporation acquired Bates Rubber in 2013 and initiated a pattern and practice of age discrimination against older employees. (*Id*. ¶ 26.) The Complaint describes a series of incidents in which older employees received discipline and demotions and eventually lost their jobs as part of this pattern, allegations which are supported by affidavits from two of the affected employees, David Weston and Tim O'Guin. *See* Weston Aff., ex. A to Compl., O'Guin Aff., ex. B to Compl. The Complaint alleges that McDaniel was generally "abrasive and rude" to Rhodes and other older plant employees. (*Id*. ¶¶ 40, 61.) McDaniel made age-related comments and treated older employees with condescension, for example, by speaking to them loudly and slowly. (*Id*. ¶ 41.) McDaniel also let it be known that she preferred to eliminate older employers who had more seniority, higher salaries, and greater accrued benefits like paid time off. (*Id*. ¶ 46.)

The Complaint alleges that prior to Rhodes's termination, McDaniel replaced one older supervisor at the plant with a younger employee named Scott Cude. (*Id*. ¶ 43.) Cude, who is not a

party to this action, made remarks to Rhodes about his "old man shirts" and put the word out around the plant that McDaniel was looking for a way to get rid of Rhodes, because Rhodes supposedly made too much money and used too much vacation time. (*Id*. ¶ 44.) The Complaint alleges that McDaniel also made a number of comments to other plant employees about her view of Rhodes. McDaniel once described Rhodes to another management employee as "nothing but a stupid-ass old hillbilly." (*Id*. ¶ 62.) McDaniel also made comments that Rhodes "needed to go" because he made "too much money" and took four weeks of vacation a year. (*Id*. ¶ 63.) The Complaint adds that Defendants implemented a "use it or lose it" policy for accrued time off, which had a detrimental effect on older employees like Rhodes who were entitled to more vacation time because of their seniority. (*Id*. ¶ 68.)

The Complaint alleges that McDaniel's discriminatory treatment of Rhodes came to a head in 2018 and resulted first in his demotion as a supervisor and then in his termination. In September 2018, McDaniel summoned Rhodes and another plant employee to a brief meeting at which time she informed Rhodes she was demoting him from his position as a supervisor. (*Id*. ¶ 71.) Rhodes, who did not immediately challenge the decision, had no other notice of the demotion and had no reason to believe that his performance merited a demotion. (*Id*. ¶ 75.) Then a few weeks later in October 2018, Rhodes was placed on leave and ultimately fired for an alleged violation of company policy. On October 4, 2018, Rhodes had approached Marty Bullock, a welder at the plant, and asked for his help in repairing a small metal bracket Rhodes had brought from home. (*Id*. ¶ 87.) According to the Complaint, there was a long-standing custom at the plant of welders assisting other plant employees with personal repair jobs that a welder could complete off the clock during a regularly-scheduled, 30-minute break. (*Id*. ¶ 84.) Scott Cude, who was not Rhodes's supervisor, observed Rhodes speaking with the welder and reported it to McDaniel. (*Id*. ¶¶ 89, 90.) McDaniel approached Rhodes and the welder about their activities and then directed human resources to take statements from each. (*Id*. ¶ 91.) Human resources, at McDaniel's direction, advised Rhodes he was being

placed on administrative leave for working on personal matters on company time. (*Id.*) Rhodes was permitted to retrieve two personal items from his desk and then escorted from the plant. (*Id.* ¶ 96.) Rhodes was informed six days later that his employment was being terminated. (*Id.* ¶ 100.) Upon his termination, Rhodes applied for unemployment benefits, which Defendants contested during administrative proceedings.

**II. Procedural History**

Rhodes originally filed suit in the Circuit Court for Perry County, Tennessee, on January 15, 2019. Defendants removed the suit to federal court and filed their Notice of Removal (ECF No. 1) on February 14, 2019. Defendants alleged in their Notice of Removal that this Court had jurisdiction under 28 U.S.C. § 1332(a) based on the amount in controversy and the complete diversity of citizenship of the parties. Defendants specifically argued that Rhodes had fraudulently joined McDaniel, who like Rhodes is a resident of the state of Tennessee. The Complaint alleges only one cause of action against McDaniel, the IIED claim. According to the Notice of Removal, Rhodes's IIED claim against McDaniel arose out of his employment under McDaniel's supervision and his eventual termination at Bates Rubber. Courts applying Tennessee law have concluded that the emotional distress associated with the terms and conditions of one's employment and even the loss of that employment will not support a claim for IIED. Therefore, Rhodes's attempt to defeat diversity by including a meritless IIED claim against McDaniel should fail, and this Court should accept subject matter jurisdiction over the case.

Rhodes now asks the Court to remand his case to Perry County Circuit Court based on the lack of complete diversity of citizenship among the parties. Rhodes argues that he has plausibly alleged an IIED claim against McDaniel and that Defendants have failed to carry their burden to show fraudulent joinder. While conceding that an insult or an adverse employment action typically will not make out an IIED claim, Rhodes contends that McDaniel's actions in his case went beyond mere

derogatory remarks or discriminatory treatment. Rhodes believes that McDaniel acted with malicious intent by (1) placing Rhodes on administrative leave for violating a workplace policy that did not exist, (2) refusing to provide Rhodes with a written copy of the policy, and (3) actively opposing Rhodes's application for unemployment benefits after his termination. Rhodes also emphasizes that the Court must evaluate McDaniel's conduct from the perspective of the average person in a small community like Lobelville, Tennessee, particularly how termination might cause a person in small town to experience humiliation and emotional injuries. Rhodes argues then that under all of the circumstances, his is the exceptional case where the loss of his employment supports an IIED claim. Having stated a viable IIED claim against McDaniel, Rhodes argues that there is not complete diversity of citizenship among the parties. Therefore, the Court lacks subject matter jurisdiction and should remand the case to state court.

Defendants oppose remand and argue that the Complaint fraudulently joined McDaniel as a defendant. For largely the same reasons, McDaniel argues in her separately filed Motion to Dismiss that the Complaint fails to state a plausible IIED claim against her.[1] According to Defendants, the Complaint fails to allege two essential elements of the IIED claim: outrageous conduct by any Defendant and serious mental injury to Rhodes. Defendants contend that the great weight of authority under Tennessee law holds that an employee does not have an IIED claim against an employer based on the employer's discrimination against the employee, even in cases of truly reprehensible conduct. Rhodes has failed to allege that McDaniel engaged in sufficiently outrageous conduct to support an

---

[1] The Court notes for the record that Defendants have filed separate Rule 12(b) Motions to Dismiss part or all of the claims against them. Defendants Park-Ohio Holdings Corp. and Park-Ohio Industries, Inc. have filed a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction (ECF No. 6), and Defendants Bates Rubber, Inc.; Fluid Routing Solutions, LLC; Park Ohio Assembly Components; and Supply Technologies, LLC have filed a Rule 12(b)(6) motion to dismiss in part (ECF No. 8). One of the issues raised in Defendants' Rule 12(b)(6) motion for partial dismissal is whether Rhodes has a stated a plausible IIED claim against Bates Rubber or any of the others business organizations named in the Complaint. The Court will issue its rulings on these Motions by separate order.

IIED claim against her. Likewise, the Complaint contains no allegations to show that Rhodes has suffered a serious mental injury as a result of any action taken by McDaniel. Therefore, the Court should deny Rhodes's Motion to Remand and dismiss McDaniel as a party.

Rhodes has filed a reply brief in further support of remand. Rhodes emphasizes that Defendants have the burden to establish the propriety of removal and that the doctrine of fraudulent joinder is disfavored. Rhodes further argues that McDaniel's brief misstates or mischaracterizes some of the facts alleged in the Complaint. For example, while the Complaint alleges that Rhodes asked a welder to repair a small metal bracket, McDaniel's brief refers to a piece of farm equipment. Finally, Rhodes argues that his IIED claim is fact bound and dependent upon the community standards of Perry County, Tennessee, and therefore appropriate only for a determination by a Perry County jury. For all of these reasons, the Court should grant the Motion to Remand.

## STANDARD OF REVIEW

"When a plaintiff files a case in state court that could have been brought in a federal district court, a defendant may invoke the removal statute, 28 U.S.C. § 1441, to secure a federal forum." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 83 (2005); *see also Jarrett-Cooper v. United Airlines, Inc.*, 586 F. App'x 214, 215 (6th Cir. 2014). "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also Paul v. Kaiser Found. Health Plan of Ohio*, 701 F.3d 514, 518 (6th Cir. 2012). Pursuant to 28 U.S.C. § 1332(a), federal courts have subject matter jurisdiction over any civil action "where the matter in controversy exceeds the sum or value of $75,000" and the parties are citizens of different states. 28 U.S.C. § 1332(a); *Fritz Dairy Farm, LLC v. Chesapeake Exploration, LLC*, 567 F. App'x 396, 398 (6th Cir. 2014). Diversity of citizenship must be complete, meaning "no plaintiff can be the citizen of the same State as any defendant." *Exact Software N. Am., Inc. v. DeMoisey*, 718 F.3d 535, 541 (6th Cir. 2013). The burden to establish the existence of federal

jurisdiction by a preponderance of the evidence rests with the removing party. *Nowicki-Hockey v. Bank of Am., N.A.*, 593 F. App'x 420, 421 (6th Cir. 2014); *Cleveland Housing Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 560 (6th Cir. 2010) ("[The removing party] has the burden of showing that the requirement 'more likely than not' is satisfied.").

## **ANALYSIS**

The issue presented in Rhodes's Motion to Remand is whether the Complaint fraudulently joined McDaniel as a defendant. "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 432 (6th Cir. 2012) (quoting *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999)). A defendant is fraudulently joined if it is "clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law." *Id.* (quoting *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)). This means the plaintiff must have at lease a colorable claim against the non-diverse defendant. *Coyne,* 183 F.3d at 493; *see also Spizizen v. Nat'l City Corp.*, 516 F. App'x 426, 429 (6th Cir. 2013). Remand is required unless the defendant can discharge its burden to prove fraudulent joinder. *Alexander,* 13 F.3d at 949 (citation omitted).

Ultimately the real question becomes does Rhodes have a colorable IIED claim against McDaniel? A colorable claim is one in which the allegations, if proven, would satisfy the elements of the state law claim. *Probus v. Charter Comm'ns, LLC*, 234 F. App'x 404, 407 (6th Cir. 2007). To make out a claim for IIED in Tennessee, a plaintiff must show that: (1) the conduct complained of was intentional or reckless, (2) the conduct is so outrageous that it is not tolerated by a civilized society, and (3) the conduct resulted in serious mental injury. *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 31 (Tenn. 2005) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). The Tennessee Supreme Court has remarked that a plaintiff seeking damages for IIED must meet "an exacting standard," one which requires a plaintiff to prove conduct "so outrageous in

7

character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." *Miller v. Willbanks*, 8 S.W.3d 607, 614 (Tenn. 1999) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). The threshold determination of "whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery" is a question for the court. *Bain*, 936 S.W.2d at 623 (citing *Medlin v. Allied Inv. Co.*, 398 S.W.2d 270, 274 (Tenn. 1966)).

The Court holds that the allegations of the Complaint do not rise to the level of outrageous conduct and therefore fail to show how Rhodes is entitled to relief against McDaniel. Stripped of its bare, formulaic recitation of the elements of IIED,[2] the Complaint seeks to hold McDaniel liable for a series of discrete actions, actions which largely fall into one of two categories: McDaniel's expression of personal animus toward Rhodes and other employees on the basis of their age, and McDaniel's handling of Rhodes's suspension and termination. Viewing the allegations in a light most favorable to Rhodes, none of McDaniel's alleged conduct, standing alone or taken together, meets the test for outrageousness. *Holt v. Kirk*, No. W2017-00847-COA-R3-CV, 2019 WL 1915158, at *6 (Tenn. Ct. App. Apr. 30, 2019) ("While each individual act may not qualify as outrageous, taken together, this conduct could reasonably be deemed utterly intolerable in civilized society.") (citing *Levy v. Franks*, 159 S.W.3d 66, 83-86 (Tenn. Ct. App. 2004)).

First, Rhodes alleges that McDaniel demeaned him by using condescending language in her interactions with Rhodes and by calling him patronizing names during discussions with other plant employees. Accepting as true each of Rhodes' allegations about McDaniel's comments and the manner in which McDaniel addressed him, none of the statements are befitting a plant manager or

---

[2] The Complaint includes a formulaic recitation of each element of the IIED claim, including that McDaniel's actions should not be tolerated in a civilized society and that a citizen of Perry County, Tennessee upon being told of McDaniel's actions would exclaim that her conduct was outrageous. But these conclusory allegations do very little to demonstrate an entitlement to relief.

8

suggest appropriate workplace demeanor. Nevertheless, breaches of common courtesy and civility are not the test for outrageousness. Courts applying Tennessee law have consistently held that "mere insults, indignities, threats, annoyances, petty oppression or other trivialities" cannot constitute outrageous conduct. *Bain*, 936 S.W.2d at 622. Rude behavior, and even offensive language, in the workplace simply does not meet the high standard for outrageous conduct. *Wade v. Automation Personnel Servs., Inc.*, 612 F. App'x 291, 301 (6th Cir. 2015) (holding that a supervisor's retaliation and use of coarse language was insufficient to prove the outrageous conduct element of an IIED claim under Tennessee law). The Court concludes then that McDaniel's comments about Rhodes and his age do not show that McDaniel could be liable to Rhodes for the intentional infliction of emotional distress.

Second, Rhodes alleges that McDaniel used Rhodes's supposed violation of company policy as a pretext to terminate Rhodes's employment. The Complaint plausibly shows that McDaniel made no secret of her wish to terminate Rhodes and perhaps targeted Rhodes on account of his age. When the opportunity presented itself, McDaniel used Rhodes's act of requesting help from a co-worker as a pretext to suspend Rhodes and eventually fire him. To be sure, the Complaint alleges that McDaniel failed to follow best management practices or use common techniques of progressive discipline, methods that might have given an employee, especially one with significant tenure like Rhodes, the opportunity to keep his job. According to the Complaint, Rhodes was terminated for a single violation of workplace rules after 23 years of service to the company. Rhodes had no other disciplinary issues, had no notice of the policy he allegedly violated, received no prior warnings about violating the policy, and was never provided with a written copy of the policy after his suspension. The Complaint

9

suggests that other than giving a statement to human resources on the day of his suspension, Rhodes never had another chance to respond to the charge before his termination.[3]

Even so, none of these circumstances constitute outrageous conduct. Poor management, deviations from business practices, and even outright discrimination and retaliation are typically insufficient to constitute outrageous conduct and prove an IIED claim under Tennessee law. *E.g. Johnson v. BellSouth Telecomms., Inc.*, 512 F. App'x 566, 572 (6th Cir. 2013) (holding that retaliatory discharge for protected whistle-blowing activity did not rise to the level of outrageous conduct under Tennessee law); *Collins v. Memphis Goodwill Indus., Inc.*, 489 F. App'x 901, 910 (6th Cir. 2012) (holding that investigating an employee's workplace conduct and then terminating the employee did not meet the outrageous conduct test under Tennessee law); *Jones v. Tenn. Valley Auth.*, 948 F.2d 258, 266 (6th Cir. 1991) (holding that intimidation from supervisors, unfavorable reassignment of job duties, unwarranted reprimands, low performance reviews, and being denied promotions, bonuses, and raises was not outrageous conduct); *McNeail-Tunstall v. Marsh USA*, 307 F. Supp. 2d 955, 976 (W.D. Tenn. 2004) (holding that under Tennessee law allegations of discrimination, unwarranted scrutiny from managers, and abusive language did not make out an IIED claim).

This is not to say that an employee could never have an IIED claim based on his treatment in the workplace. *Bellomy v. AutoZone, Inc.,* No. E2009–00351–COA–R3–CV, 2009 WL 4059158, at *11 (Tenn. Ct. App. Nov. 24, 2009) ("[W]e will not go so far as to say that discrimination claims can never rise to the level of outrageous conduct . . . ."). For example, "daily, consistent harassing

---

[3] Rhodes argues in his Motion to Remand that McDaniel's opposition to his application for unemployment was also outrageous. Defendants counter that Tennessee law preserves an employer's right to object to an award of unemployment benefits and submit evidence to support its position. McDaniel specifically denies that she was a party to the unemployment proceedings. However, the Complaint really alleges no plausible facts to show how McDaniel was personally involved in making the decision to oppose Rhodes's unemployment or took part in the administrative process where the state of Tennessee adjudicated Rhodes's application. Even if the Complaint had alleged facts to show that McDaniel had personally participated in the opposition to Rhodes's unemployment benefits, those allegations would not alter the Court's conclusion that McDaniel's conduct was not outrageous.

behavior [by managers and co-workers] endured over a period of months and years," conduct which was so "unusually egregious" as to be a "type of slow torture," could make out a claim for IIED. *Pollard v. E.I. DuPont de Nemours Co.*, 213 F.3d 933, 947 (6th Cir. 2000), *rev'd on other grounds*, 542 U.S. 842 (2001). However, finding outrageous conduct in a run-of-the-mill wrongful termination or disparate treatment case "would result in every discrimination claim also being an outrageous conduct claim." *Collins*, 489 F. App'x at 910 (citing *Bellomy*, 2009 WL 4059158, at *11). The facts alleged, even when viewed in a light most favorable to Rhodes, show that his was a more typical case of disparate treatment.

This leaves Rhodes's allegations that McDaniel's outrageous conduct included her opposition to his application for unemployment. Rhodes's claim suffers from two fundamental problems. First and foremost, the Complaint really alleges no plausible facts to show how McDaniel was personally involved in making the decision to oppose Rhodes's unemployment or took part in the administrative process in which the state of Tennessee adjudicated Rhodes's application. Viewing the pleadings as a whole, Rhodes has only alleged that Bates Rubber contested his right to receive unemployment.[4] And even if the Complaint had alleged facts to show that McDaniel had personally participated in the opposition to Rhodes's unemployment benefits, those allegations would not alter the Court's conclusion that McDaniel's conduct was not outrageous. Rhodes has cited no authority to show that mere opposition to an application for unemployment makes out a plausible IIED claim. *See Parker v. Side by Side, Inc.*, 50 F. Supp. 3d 988, 1023 (N.D. Ill. 2014) (holding that an employer's opposition to a former employee's application for unemployment do not meet Illinois's test for IIED). Finding it outrageous for an employer to contest a former employee's application for unemployment benefits, or as Rhodes characterizes it, to threaten the employee's financial well-being, would make every

---

[4] As the Court explains more fully in its order granting the Employer Defendants' motion to dismiss, even the pleadings show that Rhodes ultimately prevailed and received his benefits, despite the Employer Defendants' opposition.

contested unemployment proceeding the predicate for an IIED claim. This is not the law in Tennessee. Without more plausible allegations to show how McDaniel's conduct was beyond the pale, the Court holds that Rhodes does not have a colorable IIED claim against McDaniel.

Rhodes raises several arguments to avoid this outcome. Rhodes underscores the Complaint's allegations about McDaniel's state of mind: that she was "intentional," "reckless," "heartless," "malicious," and "spiteful" and that she acted out of "ill-will." *See* Compl. ¶¶ 122–26, 129, 132 (ECF No. 1-2). These allegations satisfy the general pleading standards under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). And they make out the first element of Rhodes's IIED claim, that McDaniel acted intentionally or recklessly. *Roman Catholic Diocese of Nashville*, 154 S.W.3d at 31. But even accepting as true the Complaint's allegations that McDaniel acted maliciously and with the intent to harm Rhodes, they do not meet Tennessee's legal concept of outrageous conduct.

Under Tennessee law, malice and bad intent simply do not suffice to show that a person's actions were "so outrageous in character and extreme in degree as to be beyond all bounds of decency, and to be regarded as atrocious, and utterly untolerable in a civilized community." *Miller*, 8 S.W.3d at 614. The Tennessee Supreme Court has adopted the Restatement's (Second) of Torts approach to IIED, which specifically states that malice and tortious intent fall short of outrageous conduct:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.

*Leach v. Taylor*, 124 S.W.3d 87, 92 (Tenn. 2004) (quoting Restatement (Second) of Torts § 46)). Rhodes's allegations describing McDaniel's state of mind and intent do not show that her conduct meets the imposing definition of outrageousness or alter the Court's conclusion that the conduct alleged fails to establish the elements of a colorable IIED claim under Tennessee law.

Rhodes further argues in his reply brief that his right to a jury trial under the Tennessee Constitution (1) somehow precludes the Court from deciding whether Rhodes has a colorable IIED claim and (2) requires the Court to remand the case to state court for a Perry County jury decide the claim in the first instance. Rhodes did not raise these points related to his constitutional right to a jury trial on his IIED claim in his opening brief and only discusses for the first time in his reply brief. Courts typically do not consider arguments raised for the first time in a reply brief. *Tr. of Operating Engineers Local 324 Pension Fund v. Bourdow Contracting, Inc.*, 919 F.3d 368, 380 (6th Cir. 2019).

Even on the merits, the Court finds this argument to be unconvincing. Relying on the Restatement (Second) of Torts § 46 (1965), the Tennessee Supreme Court has held that the question of outrageousness is initially for a court to decided. *Bain*, 936 S.W.2d at 623. Other jurisdictions applying the Restatement's IIED principles also treat the issue as a question of law. *E.g. Miller v. Davis*, 653 F. App'x 448, 462 (6th Cir. 2016) (applying Ohio law); *Armstrong v. Shirvell*, 596 F. App'x 433, 451 (6th Cir. 2015) (applying Michigan law); *Smith v. United States*, 121 F. Supp. 3d 112, 124 (D.D.C. 2015) ("Whether the conduct complained of is sufficiently outrageous is a question of law that should be decided by the court on a motion to dismiss.") (citing Restatement (Second) of Torts § 46 (1965)); *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 616 (Tex. 1999) (same). The Court is bound to apply the substantive law of Tennessee in this case, *Erie Ry. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), and Rhodes cites no Tennessee authority to show why the Court should not follow *Bain* and reach the question of outrageousness at the pleadings stage. This argument, therefore, fails.

As for his right to have a jury decide his IIED claim, Rhodes cites the Sixth Circuit's recent decision in *Lindenberg v. Jackson National Life Insurance Company*, 912 F.3d 348 (6th Cir. 2018). But the issue presented in *Lindenberg* was whether Tennessee's "statutory punitive damages cap [Tenn. Code Ann. § 29–39–104] violates two provisions of the Tennessee Constitution: the individual right to a jury trial and the doctrine of separation of powers." *Lindenberg v. Nat'l Life Ins.*

*Co.*, 912 F.3d 348, 363–64 (6th Cir. 2018). The Sixth Circuit concluded that the cap ran afoul of the individual right to a jury trial and declined to reach the separation of powers issue. *Id*. at 364. The Court of Appeals reached its conclusion based on its detailed historical analysis of "the right to trial by jury as it existed at common law under the laws and constitution of North Carolina at the time of the adoption of the Tennessee Constitution of 1796." *Id*. (quoting *Young v. City of LaFollette*, 479 S.W.3d 785, 793 (Tenn. 2015)). Rhodes has not attempted to perform the same historical analysis. Rhodes just makes a passing reference to *Lindenberg* and asserts without elaboration that *Lindenberg*'s "discussion of the Tennessee state constitutional right to have factual questions determined by a jury is applicable to this case." Pl.'s Reply 5 (ECF No. 25). Taken together with the fact that Rhodes has raised the argument in only the most perfunctory manner, and in a reply brief no less, the Court cannot conclude that *Lindenberg* supports Rhodes's position.

Having determined that Rhodes has failed to allege that McDaniel acted outrageously, the Court holds that Rhodes does not have a colorable IIED claim against McDaniel and that McDaniel was fraudulently joined as a non-diverse Defendant. The Court has no reason to consider whether Rhodes has alleged that he suffered a sufficiently serious mental injury. The Motion to Remand is **DENIED**.

This leaves McDaniel's pending Motion to Dismiss for failure to state a claim. The Court need not reach the merits of the Rule 12(b)(6) Motion. The correct remedy for fraudulent joinder is the dismissal of McDaniel as a party to this action. *Pollington v. G4S Secure Solutions (USA) Inc.*, 712 F. App'x 566 (6th Cir. 2018) ("Had it determined that [the non-diverse defendant] was improperly served or fraudulently joined, it should have dismissed him from the suit."). Therefore, McDaniel is dismissed from this suit, and her Motion to Dismiss is **DENIED** as moot.

## CONCLUSION

Plaintiff's Motion to Remand is **DENIED**.  Defendant Pamela McDaniel is **DISMISSED** as a party to this action, and her Motion to Dismiss is **DENIED** as moot.

**IT IS SO ORDERED.**

        **s/ S. Thomas Anderson**
        S. THOMAS ANDERSON
        CHIEF UNITED STATES DISTRICT JUDGE

        Date:  June 26, 2019.